

1  COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
3  BENNY C. GOODMAN III (211302)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   darrenr@csgrr.com
6  travisd@csgrr.com
   bennyg@csgrr.com
7
   KENDALL LAW GROUP, LLP
8  JOE KENDALL
   HAMILTON LINDLEY
9  3232 McKinney Avenue, Suite 700
   Dallas, TX 75204
10 Telephone: 214/744-3000
   214/744-3015 (fax)
11 jkendall@kendalllawgroup.com
   hlindley@kendalllawgroup.com
12 Attorneys for Plaintiff

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                   SOUTHERN DIVISION

16 BUILDING TRADES UNITED            )  **VIA FAX**
   PENSION TRUST FUND, Derivatively  )
   on Behalf of STEC, INC.;          )  No.  **CV10-00667 SJO(ANX)**
17                                   )
                    Plaintiff,       )  VERIFIED SHAREHOLDER
18                                   )  DERIVATIVE COMPLAINT FOR
          vs.                        )  BREACH OF FIDUCIARY DUTY
19                                   )
   MANOUCH MOSHAYEDI, MARK           )
20 MOSHAYEDI, RAYMOND D. COOK,       )
   RAJAT BAHRI, F. MICHAEL BALL,     )
21 CHRISTOPHER W. COLPITTS,          )
   MATTHEW L. WITTE and DAN          )
22 MOSES,                            )
                                     )
23                  Defendants,      )
                                     )
24       – and –                     )
                                     )
25 STEC, INC., a California corporation, )
                                     )
26                Nominal Defendant. )  <u>DEMAND FOR JURY TRIAL</u>
   ──────────────────────────────────)

27

28

**JURISDICTION AND VENUE**

1. This Court has jurisdiction under 28 U.S.C. §1332(a)(2). This is because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

2. This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this Court under 28 U.S.C. §1391(a) because: (i) STEC, Inc. maintains its principal place of business in the District; (ii) one or more of the defendants either reside in or maintain executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to STEC, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

4. STEC, Inc.'s principal executive offices are located at 3001 Daimler Street, Santa Ana, California.

**NATURE OF THE CASE**

5. This is a shareholder derivative action on behalf of nominal defendant STEC, Inc. ("STEC" or the "Company") against its entire Board of Directors (the "Board") and certain top officers for breach of fiduciary duties, corporate waste,

1    unjust enrichment, and insider trading.[1]  Defendants include: Manouch Moshayedi,

2    Mark Moshayedi, Dan Moses, Matthew L. Witte, Rajat Bahri, F. Michael Ball,

3    Christopher W. Colpitts and Raymond D. Cook.

4         6.    STEC designs, develops, manufactures and markets custom memory

5    solutions based on flash memory and dynamic random access memory ("DRAM")

6    technologies.  One of the Company's primary products is a solid-state disk drive

7    ("SSD") that stores electronic information like a traditional Hard Disk Drive

8    ("HDD"), but unlike an HDD, has no moving parts.  SSDs recently gained notoriety

9    when they were included as a top-end option in Apple's ultra-portable laptop

10   computer.  STEC's primary competition was from companies that produce NAND

11   flash memory – like the memory used in many popular portable music players.

12        7.    STEC once had the SSD market to itself.  Beginning on June 16, 2009,

13   defendants caused STEC to issue materially false and misleading statements regarding

14   STEC's customers, its competitive position and its prospects.   The Company

15   specifically failed to disclose looming threats of competition from other technology

16   companies, such that STEC would not be the only company to gain design wins,

17   thereby cornering the lion's share of the SSD market. Defendants misrepresented that

18   STEC had no competition in that market and assured investors that enterprise end

19   users were quickly adopting SSD devices over traditional HDD devices. Defendants'

20   false and misleading statements caused STEC stock to trade at artificially inflated

21   prices during the Relevant Period (June 16, 2009 to November 3, 2009), reaching a

22   high of $41.84 per share on September 10, 2009.  This inflated stock price permitted

23   top STEC officers/directors to sell 9 million shares of their STEC stock in an August

24   2009 secondary stock offering, reaping over $267 million in illegal insider trading

25   profits.

26   _____

27   [1]    As a result of defendants' misconduct, STEC has suffered and will continue to
     suffer substantial damages and injuries to its business reputation and goodwill.

28

8.    Defendants' subterfuge was revealed on September 17, 2009, when an analyst report leaked that one of STEC's top customers was working closely with Toshiba – a major HDD manufacturer – and was in the final qualification stages for SSDs. Moreover, according to this report, another leading HDD company was likely to introduce a SLC SATA/SAS SSD and possibly a Multi-Level-Cell SSD drive in the fourth quarter, presenting an additional competitive threat to STEC and its business.

9.    On this news, STEC's stock price collapsed $6.37 per share – instantly wiping out over $300 million in shareholder equity.

10.    Just as shareholders were digesting these material adverse facts, on November 3, 2009, STEC announced that one of its major customers, EMC Corporation ("EMC"), which accounts for 90% of the STEC's ZeusIOPS-branded SSD business, would carry 2009 inventory into 2010 which would have a negative impact on the Company's first quarter 2010. In other words, EMC would not be placing many new orders in early 2010.

11.    On this news, STEC's stock plunged $9.01 per share – instantly wiping out another $450 million of shareholder equity. All told, defendants' breaches of their fiduciary duties wiped out over $700 million in shareholder equity and wreaked untold damage on the Company's good will. As a result of defendants' deceptive misconduct, STEC has also been named as a defendant in a costly and expensive-to-defend securities class action lawsuit.

12.    While STEC has been severely injured by defendants' misconduct, defendants have not fared nearly so badly. In fact, while STEC stock traded at artificially inflated prices, certain defendants sold 9 million shares of STEC common stock in a secondary public offering, for unlawful insider trading proceeds exceeding $267 million.

**PARTIES**

13.    Plaintiff Building Trades United Pension Trust Fund ("Building Trades") has continuously held shares of STEC since August 2008. Building Trades' principal offices are located at 500 Elm Grove Road, Elm Grove, Wisconsin 53122

14.    Nominal defendant STEC is a California corporation with its headquarters located at 3001 Daimler Street, Santa Ana, California 92705.

15.    Defendant Manouch Moshayedi, co-founder of STEC, is and has been Chairman of the Board and Chief Executive Officer ("CEO") of STEC since March 1990. From March 1990 until September 1994, Manouch Moshayedi acted as STEC's Chief Financial Officer ("CFO"). Manouch Moshayedi sold 4.5 million shares of his STEC stock for illegal insider trading proceeds of nearly $134 million. Manouch Moshayedi resides at 2121 Bayside Drive, Corona Del Mar, CA 92625.

16.    Defendant Mark Moshayedi is and has been Chief Operating Officer ("COO"), Chief Technical Officer, and Secretary of STEC since January 1995 and a director since March 1992. Defendant Mark Moshayedi served as STEC's President since March 2007 and from June 1994 to December 1994 served as STEC's President of Research and Development. Mark Moshayedi and Manouch Moshayedi are brothers. Mark Moshayedi sold 4.5 million shares of his STEC stock for illegal insider trading proceeds of nearly $134 million. Mark Moshayedi resides at 14 Channel VIS, Newport Coast, CA 92657.

17.    Defendant Dan Moses ("Moses") has been a STEC director since March 2000. From October 1992 to August 1994, defendant Moses served as STEC's controller; from August 1994 to November 2008 he was STEC's CFO; and from August 2006 to November 2008 he was STEC's Executive Vice President. Defendant Moses resides at 1251 Dodge City Place, Norco, CA 92860.

18.    Defendant Matthew L. Witte ("Witte") has been a STEC director since January 2009. Witte is also a member of the Audit, Compensation, and Nominating

1  and Corporate Governance Committees.  Defendant Witte resides at 31541 Table
2  Rock Drive, Laguna Beach, CA  92651.

3      19.    Defendant Rajat Bahri ("Bahri") has been a STEC director since
4  November 2005.    Bahri is also a member of the Audit, Compensation, and
5  Nominating and Corporate Governance Committees.  Defendant Bahri resides at
6  11121 Magdalena Road, Los Altos Hills, CA  94024.

7      20.    Defendant F. Michael Ball ("Ball") has been  a STEC director since
8  October 2000.  Ball is also a member of the Audit and Compensation Committees.
9  Defendant Ball resides at 215 Larkspur Avenue, Corona Del Mar, CA  92625.

10     21.    Defendant Christopher W. Colpitts ("Colpitts") has been a STEC director
11  since March 2009.  Defendant Colpitts resides at 125 Belgrave Avenue, San
12  Francisco, CA  94117.

13     22.    Defendant Raymond D. Cook ("Cook") is and has been CFO of STEC
14  since November 2008.  Defendant Cook resides at 5291 Glenroy Drive, Huntington
15  Beach, CA  92649.

16                    **DEFENDANTS' FIDUCIARY DUTIES**

17     23.    Each officer and director of STEC owed STEC or its shareholders the
18  duty to exercise a high degree of good faith, loyalty, candor and diligence in the
19  management and administration of the affairs of the Company, as well as in the use
20  and preservation of its property and assets.  The conduct of STEC's directors and
21  officers complained of herein involves oppression and fraudulent misconduct – a
22  knowing, intentional and culpable violation of their obligations as directors and
23  officers of STEC and the absence of good faith on their part as to their duties to the
24  Company and its shareholders.  The misconduct of STEC's officers has been ratified
25  by STEC's Board, which has failed to take any legal action on behalf of the Company
26  against them.

27     24.    By reason of their positions as officers, directors and/or fiduciaries of
28  STEC and because of their ability to control the business and corporate affairs of

1  STEC, defendants owed STEC and its shareholders fiduciary obligations of candor,

2  trust, loyalty and good faith, and were required to use their ability to control and

3  manage the Company in a fair, just, honest and equitable manner, and to act in

4  furtherance of the best interests of STEC and its shareholders so as to benefit all

5  shareholders equally and not in furtherance of their personal interests or benefit.  In

6  addition, as officers and/or directors of a publicly held company, defendants had a

7  duty to promptly disseminate accurate and truthful information with respect to the

8  Company's operations, projections and forecasts, so as to (i) fulfill their duty of

9  candor and honesty to STEC's existing shareholders; and (ii) so that the market price

10  of STEC's stock would be based on truthful and accurate information.

11       25.    The defendants, because of their positions of control and authority as

12  directors and/or officers of STEC, were able to and did, directly and indirectly, control

13  the wrongful acts complained of herein.  Because of their executive and directorial

14  positions with STEC, each of the defendants had access to adverse non-public

15  information about the financial condition, operations, and future business prospects of

16  STEC and was required to disclose it promptly and accurately to its shareholders and

17  the financial markets but did not do so.

18       26.    To discharge their duties, the directors of STEC were required to exercise

19  good faith and loyalty in the management, policies, practices and controls of the

20  business and financial affairs of STEC.  By virtue of such duties, the officers and

21  directors of STEC were required, among other things, to:

22            (a)    Manage, conduct, supervise and direct the business affairs of

23  STEC in accordance with the law (including U.S. securities laws and the Sarbanes-

24  Oxley Act), government rules and regulations and STEC's charter and bylaws;

25            (b)    Neither violate nor knowingly permit any officer, director or

26  employee of STEC to violate applicable laws, rules and regulations;

27            (c)    Remain informed as to the status of STEC's operations, and upon

28  receipt of notice or information of imprudent or unsound practices, to make a

reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with their duty of candor to the Company's shareholders;

(d)    Establish and maintain systematic and accurate records and reports of the business and affairs of STEC and procedures for the reporting of the business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    Maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that STEC's financial statements would be accurate and the actions of its directors would be in accordance with all applicable laws; and

(f)    exercise reasonable control and supervision over public statements to the securities markets and trading in STEC stock by the officers and employees of STEC.

27.    Each of the defendants occupied a position with STEC or were associated with the Company in such a manner as to make them privy to confidential and proprietary information concerning STEC and its operations, finances and financial condition. Because of these positions and such access, each of the defendants knew that the true facts specified herein regarding STEC's business and finances had not been disclosed to and were being concealed from its shareholders and the public. The defendants, as corporate fiduciaries entrusted with non-public information, were obligated to disclose material adverse information regarding STEC and to take any and all action necessary to ensure that the officers and directors of STEC did not act upon such privileged non-public information in a manner which caused the Company to violate the law.

28.    The defendants breached their duties of loyalty and good faith by allowing, or by themselves causing, the Company to misrepresent its financial results and prospects, as detailed herein, and by failing to prevent defendants from taking

1  such illegal actions.  Each of the defendants participated in the issuance and/or review

2  of false and/or misleading statements, including the preparation of false and/or

3  misleading press releases, SEC filings and reports to STEC shareholders.  In addition,

4  as a result of defendants' illegal action and course of conduct, the Company is a

5  named defendant in a costly and expensive-to-defend securities class action.  As a

6  result, STEC has expended and will continue to expend significant sums of money.

7  Moreover, these actions have irreparably damaged STEC's corporate image and

8  goodwill.

9  **BACKGROUND**

10  29.    STEC designs, develops, manufactures, and markets custom memory

11  solutions based on solid state technologies, including SSDs, flash memory and DRAM

12  technologies.  STEC markets itself as a company that tailors its products to meet the

13  high-performance, high-reliability needs of Original Equipment Manufacturers

14  ("OEMs").[2]  STEC's CEO and co-founder, defendant Manouch Moshayedi, holds

15  STEC out as having cornered the market on SSD technology, telling analysts that "we

16  have no competition at this stage."

17  30.    In fact, these claims were false.  The truth was that several other major

18  manufacturers, including Toshiba and Samsung, were moving quickly to enter the

19  SSD market.  These well-established companies represented a significant threat to

20  STEC's SSD business.

21  **DEFENDANTS' FALSE AND MISLEADING STATEMENTS
ISSUED DURING THE CLASS PERIOD**

22

23  31.    On June 16, 2009, defendants caused STEC to issue a press release

24  entitled "STEC Increases Its Guidance for the Second Quarter of 2009," which stated

25  in part:

26  _____

27  [2]    OEMs are companies that produce hardware to be sold under another
company's brand.

28  - 8 -

STEC, Inc. today announced that based on the Company's preliminary review of its anticipated financial performance, it is increasing its guidance for the second quarter of 2009.

The Company expects to report Non-GAAP diluted earnings per share in the range of $0.32 to $0.36, versus the previous guidance of $0.20 to $0.22 per diluted share announced on May 11, 2009.

The Company also expects to report revenue in the range of $82 million to $84 million, versus the previous estimate of $68 million to $70 million.

The increased Non-GAAP diluted earnings per share and revenue guidance are primarily the result of increases in the Company's ZeusIOPS sales which now are estimated to exceed $55 million during the second quarter of 2009.

The Company had previously estimated revenue from ZeusIOPS SSDs to surpass $65 million during the first half of 2009. With this increase in revenue, the Company now expects ZeusIOPS SSD sales to exceed $80 million during the first half of 2009.

32.    On July 16, 2009, defendants caused STEC to issue a press release entitled "STEC Signs a $120 Million Supply Agreement for ZeusIOPS SSDs for 2H 2009 and Now Forecasts Sales of ZeusIOPS SSDs to Exceed $220 Million in 2009 – STEC and Its Major Enterprise Storage Customers Continue Collaboration to Drive Adoption of SSD Technology Into High-Performance Enterprise Storage Systems," which stated in part:

STEC, Inc. announced today that it has signed an agreement with one of its largest enterprise storage customers for sales of $120 million of ZeusIOPS SSDs in the second half of 2009. STEC believes that this agreement reflects the enterprise storage manufacturer's continued commitment to integrate STEC's SSD technology into the

- 9 -

manufacturer's systems and validates significant storage system performance improvements enabled by STEC's ZeusIOPS SSDs in these enterprise systems. With this agreement signed, STEC now forecasts revenue from the sale of its ZeusIOPS drives will exceed $220 million in 2009.

"We are pleased to see that sales of our customer's enterprise storage systems utilizing our ZeusIOPS drives have grown significantly over the past few years," said Manouch Moshayedi, Chairman and Chief Executive Officer of STEC. "Our customers have helped evangelize this technology and we are glad to be partnered with them as we expect that they will help drive further innovation in SSD usage in the highest-end of the enterprise storage markets."

The STEC ZeusIOPS SSD product family offers a comprehensive array of options for enterprise system architects. ZeusIOPS SSD provides a wide range of interface options, spanning Fibre Channel to SAS to SATA, as well as the widest range of capacity options, spanning 73GB to 1TB. Fundamental to the ZeusIOPS product family is the proprietary SSD architecture which renders an enterprise-optimized storage device with an unprecedented combination of performance and energy efficiency.

33.    On August 3, 2009, defendants caused STEC to announce its second quarter 2009 financial results, in a release which stated in part:

STEC, Inc. announced today its financial results for the second quarter ended June 30, 2009. Revenue for the second quarter of 2009 was $86.4 million, an increase of 53.7% from $56.2 million for the second quarter of 2008, and an increase of 35.9% from $63.5 million for the first quarter of 2009. Shipments of our ZeusIOPS Solid-State drives ("SSD") into the Enterprise-Storage market grew to $57.7 million for the second quarter

of 2009, an increase of approximately 375% from $12.1 million for the second quarter of 2008, and an increase of approximately 125% from $25.7 million for the first quarter of 2009.

GAAP gross profit margin was 50.0% for the second quarter of 2009, compared to 32.3% for the second quarter of 2008 and 36.3% for the first quarter of 2009. GAAP diluted earnings per share from continuing operations was $0.38 for the second quarter of 2009, compared to $0.03 for the second quarter of 2008, and $0.07 for the first quarter of 2009.

*    *    *

Additional highlights for the second quarter of 2009 include:

* signed a recently-announced $120 million contract to supply ZeusIOPS SSDs to a major Enterprise-Storage customer for the second half of 2009;

* signed a $28 million, 12-month contract to supply the ruggedized MACH8 SSD to a leading defense systems contractor, extending reach of one our key product lines beyond the traditional storage market;

* accelerated adoption of the ZeusIOPS SSDs into major Enterprise-Storage and Enterprise-Server OEM customers, including IBM, Fujitsu, Compellent and HP;

* increased cash and cash equivalents, and short-term investments at the end of the second quarter of 2009 to approximately $94 million, a 49% increase from the end of the prior quarter;

* decreased inventory to approximately $38 million at the end of the second quarter of 2009, a 16% decrease from the end of the prior quarter; and

1           *      successfully transitioned 100% of the Company's

2                manufacturing from California to Malaysia.

3    Business Outlook

4           "It is exciting to share such outstanding results today and to

5    deliver significant revenue, gross profit margin and EPS growth for the

6    second quarter of 2009," said Manouch Moshayedi, STEC's Chairman

7    and Chief Executive Officer. "We have shown a significant improvement

8    in our already strong balance sheet – particularly in the generation of

9    cash and effective management of inventory – added four more major

10   Enterprise-Storage OEMs to our blue chip customer list, and surpassed

11   our stated year-end 2009 non-GAAP gross profit margin goal of 40%,

12   expanding it to 50% in the second quarter of 2009.

13          "In our prior quarter's earnings announcement we had estimated

14   that ZeusIOPS revenue for the first half of 2009 would surpass $53

15   million. I am pleased to report that we have actually achieved $83

16   million in ZeusIOPS revenue for this period. Although we are still early

17   in the process of the adoption of SSDs into the Enterprise-Storage

18   market, I believe that the $120 million supply agreement that we signed

19   for the second half of 2009 is a further indication of future SSD growth

20   and customers' acceptance of SSDs into this growing market. I am very

21   excited about our product road map – specific to the Enterprise-Storage,

22   Enterprise-Server and related markets."

23       34.    Additionally, on August 3, 2009, defendants caused STEC to announce a

24   secondary offering of an aggregate of 7.5 million shares of common stock by selling

25   shareholders and officers of STEC, defendants Manouch Moshayedi and Mark

26   Moshayedi, giving underwriters an option to purchase 1.125 million additional shares

27   from the selling shareholders, solely to cover any over allotments. The proceeds from

28   the sales by the selling shareholders stated that STEC would not receive any of the

1 | proceeds from the sales in this offering.  On that day, STEC filed a Registration

2 | Statement signed by defendants Manouch Moshayedi, Mark Moshayedi, Ball, Bahri,

3 | Colpitts, Witte, Moses and Cook.  The Registration Statement was incorporated by

4 | reference in the subsequently filed Prospectus.

5 |        35.    After releasing its second quarter 2009 financial results on August 3,

6 | 2009, STEC hosted a conference call for analysts, investors and media representatives,

7 | during which defendants represented the following:

8 | [COOK:]    We are very pleased to report our second quarter of 2009

9 | net revenues of $86.4 million surpassing [our] revised guidance of $82

10 | million to $84 million, and up 36% over the first quarter of 2009.

11 | Revenue from our signature ZeusIOPS SSDs was $57.7 million and up

12 | nearly 125% over the first quarter of 2009 revenue of $25.7 million.

13 |                        *        *        *

14 |        Turning now to our guidance for the third quarter of calendar year

15 | 2009, we expect our revenues to be in the range of $95 million to $97

16 | million with diluted non-GAAP earnings per share in the range of $0.45

17 | to $0.47.

18 |                        *        *        *

19 | [MANOUCH MOSHAYEDI:] We think that . . . , on a go forward

20 | basis, our margins will remain in the 50 to 60% area.  As you know, *we*

21 | *have no competition at this stage*.  In addition to that, the current hard

22 | drive manufacturers in the enterprise area are still making upwards of

23 | 40% margin in that business.  So we feel that even going forward, if we

24 | have competition in the area of enterprise, with moving to Malaysia,

25 | with combination of changing our FGPAs to ASIC next year, and also

26 | the capacity that we've built in Malaysia and being able to build all of

27 | these – streamline all of the buildings of the SSDs, I think we will be

28 | able to maintain about 50% margin for ZeusIOPS.  And as ZeusIOPS

grows to be the biggest part of our sales, I think we'll maintain the same type margins.

\*       \*       \*

[ANALYST:]        And just along those lines, if you look at your biggest customer, 39%, in the 10-Q filing for Q2, and that's coming from 20% Q1, if you assume the biggest customer is driving basically all the ZeusIOPS, in terms of ZeusIOPS revenue that would be roughly 49% of ZeusIOPS revenue in Q1 and 58% in Q2. What happens to this percentage associated with this biggest customer in terms of ZeusIOPS as you go into the second half. I got to assume with more customers and newer customers that you gain in the first half starting to hit volume production in the second half that really this percentage for this biggest customer as a percentage of the total ZeusIOPS business [h]as to start coming back down a little bit. Would that be right?

[MANOUCH MOSHAYEDI:]  Exactly, Gary. Just to be clear, I think on the ZeusIOPS side, the other four customers that we have in this area, they have to come up and do the marketing and sales that the first customer is doing to get up to those sort of volumes. But going forward, I can't predict exactly if it is going to be next quarter or the quarter after, everybody is working extremely hard in getting SSDs, on top of their enterprise storage devices, they're trying to devise new systems, SSD based only, so I think this is a very good indication of what could happen to our revenues and profits going forward once the other four customers start hitting their marks also.

\*       \*       \*

[ANALYST:]        Quick question on EMC, your largest customer. They made a comment about, on their earnings call about shipping close to a petabyte [or] actually over a petabyte of Flash related storage year to

- 14 -

1    date. And that conference call took place three weeks into the month of

2    July. Obviously there's been a fairly steep ramp, particularly in light of,

3    if we're guessing correctly, to that large supply contract you signed for

4    second half of the year involved, but how much of -- if we're thinking

5    about that petabyte shift, was July a fairly big month for you guys in

6    terms of shipments so far? Just want to get my hands around the

7    steepness of the ramp going into the second half of the year.

8        [MANOUCH MOSHAYEDI:] We think that ZeusIOPS sales

9    from Q to Q is going to go up about $10 million from Q2 to Q3. So the

10    ramp is right now about 20% rate on a quarterly basis. That's basically

11    based on one customer in production, four customers are still in pre

12    production type of stage. So I think we will start seeing a ramp on a few

13    things. One of our customers is in the middle of discussions in terms of

14    M&A discussions. I think once that gets resolved, the customer will kick

15    back in and start buying at its original rate. The other three customers are

16    very large, and it takes them a little longer to get all the parts right. So I

17    think once they start kicking in, we will see huge ramps in sales of

18    ZeusIOPS going forward. I don't know if it's going to be next quarter,

19    the quarter after, but it will come sooner or later.

20                    *        *        *

21    [ANALYST:]        If I'm looking at the time math right, with the 39% of

22    revenue that you got from your largest customer, be it maybe EMC,

23    we'll assume, and what you're guiding, I guess still reiterating the 220 in

24    terms of Zeus revenue for the full year, it seems to me that you're – are

25    you being relatively pretty conservative with regard to the ramp to the

26    other customer opportunities, which I think last quarter you said would

27    reach into full production in Q3?

28

- 15 -

[MANOUCH MOSHAYEDI:]  Yes, so I think other customers are taking a little bit longer than expected in terms of full production. They're introducing the systems into the market. It looks like everybody is going through the same trials and tribulations that our first customer went through in terms of sales and marketing side. So, It's still a, I would say, maybe a quarter or two away from full ramping production.

36.    On August 3, 2009, defendants caused STEC to file its quarterly report on Form 10-Q for the second quarter 2009, which was signed by defendants Manouch Moshayedi and Cook and represented that:

A major area of our Flash-based product investment has been focused on SSD technology. We believe the advantages of SSD technology are currently being defined in several distinct market segments;  a) enterprise-storage  applications,  b) enterprise-server applications, c) military and industrial applications, d) PC mobile computing and consumer-related markets and e) video-on-demand ("VoD") applications. We see opportunities to leverage our SSD expertise across each of these markets where we believe our technology can outperform existing solutions. In addition, we believe the SSD market will continue to expand over the next few years as overall unit volume growth is expected, aided by the decline in Flash component pricing, which will serve to improve the comparative economics of Flash-based SSDs versus HDDs in both new and existing storage applications. We expect continued growth in the sales of our Flash-based SSD ZeusIOPS products through 2009 based on the accelerated adoption of our ZeusIOPS SSDs by most of our major enterprise-storage and enterprise-server OEM customers into their systems. As part of this expected growth, on July 16, 2009 we announced an agreement with one

of our largest enterprise storage customers for sales of $120 million of ZeusIOPS SSDs in the second half of 2009.

37.    The Company filed a prospectus for the offering on August 7, 2009, which was incorporated into the Registration Statement filed on August 3, 2009. The Prospectus included the following representations that it would be difficult for competitors to catch up with STEC:

> We believe that we are a technology leader in solid-state storage due to our nearly 20 years of focus on advanced memory solutions. Throughout our history, we have delivered advanced memory and storage solutions to a wide range of customers in various market segments, and we continue to develop products to meet the need of enterprises to constantly improve the retention of, and access to, critical data at high performance levels.

> **Our solutions**

> The key features of our products include:

> * *Proprietary controller IC technology.* In order to be first-to-market with innovative storage technologies, we design the fundamental logic for our SSD products. The controllers within our various SSD products are the key to enabling high levels of performance and reliability.

> * *High degree of customization.* Products sold to our customers are typically customized by our design and engineering teams to meet our customers' specific design requirements.

> * *High performance.* Our SSD technology is optimized for exceptionally low-latency, fast access times and sustained high megabyte-per-second speeds.

1           \*    *High density*.  Our patented Stacking technology allows us

2              to design and manufacture products in which multiple

3              memory chips are Stacked vertically to increase the

4              capacities without increasing the product footprint. In some

5              cases, our IC Tower and Postage Stamp Stacking memory

6              technology allows us to create a high capacity solution that

7              is otherwise not currently available in the market using

8              standard devices, and in other cases it allows us to provide

9              the same capacity as a standard module at a lower price

10             point.

11          \*    *Compact size*.  We are able to manufacture high-density

12             products with some of the smallest form factors in the

13             market in order to meet the ever-reducing size requirements

14             of our customers' products.

15          \*    *High reliability*.   Our products are built utilizing

16             sophisticated error detection and correction processes to

17             provide high data reliability and integrity. In addition, our

18             products are designed to withstand high levels of shock and

19             vibration as well as extreme temperature fluctuations.

20          \*    *Low power consumption*.  SSD products generally require

21             less power than equivalent IOPs performance HDDs

22             because fewer SSDs are required to achieve the same

23             performance and SSDs do not contain moving parts.

24                     **THE TRUTH IS REVEALED**

25        38.    None of defendants' public statements revealed STEC's true condition to

26 shareholders.  In fact, during August and September 2009, key STEC customers had

27 been working closely with Toshiba on qualification of a Toshiba SSD, which would

28

1  have a significant adverse effect on STEC's future results. This development was not

2  disclosed to STEC investors.

3       39.  On September 17, 2009, WedBush Morgan published its analyst report

4  on STEC, identifying important adverse information it had obtained, not from the

5  Company, but through its own independent research, stating in part:

6       • **Our industry checks indicate that one of STEC's Tier I**

7       **OEM enterprise customers is in final qualification**

8       **stages with Toshiba for its Single Level Cell (SLC)**

9       **NAND-based serial attached SCSI (SAS) interface SSD.**

10      While we had expected STEC's competitors to gain design

11      wins at its OEMs, we believed this would likely not occur

12      until the first half of 2010.

13      • **Industry checks lead us to believe a leading Hard Disk**

14      **Drive (HDD) OEM is likely set to introduce a SLC**

15      **SATA/SAS SSD and possibly a Multi-Level-Cell (MLC)**

16      **SSD drive in Q4.**

17      40.  As a result of this report, STEC's stock collapsed $6.37 per share to close

18 at $31.53 per share on September 17, 2009, wiping out over $300 million in

19 shareholder equity.

20      41.  Then, on November 3, 2009, defendants caused STEC to report its third

21 quarter 2009 results and outline the Company's fourth quarter 2009 outlook, in a

22 release which stated in part:

23      Business Outlook

24      "I am very pleased to share with you, our exceptional results for

25      the third quarter of 2009," said Manouch Moshayedi, STEC's Chairman

26      and Chief Executive Officer. "Our solid operating results, the

27      strengthening of our balance sheet and the further integration of our

28      SSDs into our customers' platforms leave us in a great position to

address the growth opportunities and challenges that lie ahead. Despite a sluggish economy, we believe our growth through the end of the year will continue."

"One of our customers entered into a $120 million supply agreement with us for shipments covering the second half of 2009. We recently received preliminary indications that our customer might carry inventory of our ZeusIOPS at the end of 2009 which they will use in 2010. In light of this development, we have jointly initiated a strategic sales and marketing incentive program designed to promote the integration of STEC's SSDs into their systems. As of September 30, 2009, we have accrued $1.5 million of estimated costs for this marketing incentive program. Both companies believe that we will be successful in increasing the pace of the replacement of HDDs with SSDs. If our marketing program is not successful in increasing the demand flow of SSDs, our first quarter of 2010 orders from this customer will be negatively affected; however, the actual impact cannot be quantified at this time.

"We are also working on implementing sales and marketing incentive programs at our other major customers to further proliferate the use of our SSDs in their systems. We believe that it is just a matter of time before these customers become more significant to our overall sales of SSDs. In addition, we continue to qualify our ZeusIOPS into new platforms at our customers and are working closely with them to promote integration of SSDs into their systems by participating in sales conferences and end-user training programs both in the U.S. and in Europe. We believe these activities will help accelerate the adoption of our SSDs over the course of 2010.

"Longer-term, we believe that SSDs in the Enterprise market are here to stay and will grow to become a very significant market within the next five years. Further, we believe that as this market grows, there will be room for a few additional players and that STEC will remain the dominant player in Enterprise-class SSDs."

Guidance

"We currently expect fourth quarter of 2009 revenue to range from $101 million to $103 million (net of $2.4 million of estimated reserves related to sales and marketing incentive programs) with diluted non-GAAP earnings per share to range from $0.51 to $0.53."

42.    On this news, shares of STEC stock plunged $9.01 per share to close at $14.14 per share on November 4, 2009, wiping out another $450 million in shareholder equity. The September 17, 2009 and November 4, 2009 revelations together destroyed over $750 million in shareholder equity.

43.    The Relevant Period statements described above failed to disclose and misrepresented the following material adverse facts, which defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

(a)    STEC's larger customers were increasingly able to secure SSDs from STEC's competitors, such that STEC did not have the competitive advantages represented;

(b)    STEC's competitors' design process was much further along than represented;

(c)    Enterprise end users were slow to adopt SSD technology over traditional HDD technology; and

(d)    STEC's future margins were not as secure as suggested by defendants as STEC's competitors' offerings were showing signs of cutting into STEC's prior advantage, with the probable result being lower prices and margins.

- 21 -

1    44.    As a result of defendants' false statements, STEC's stock traded at

2  inflated levels during the Relevant Period.  After the above revelations, when it

3  became apparent that STEC's competitive position was not as strong as represented,

4  the Company's stock dropped precipitously, wiping out over $750 million in

5  shareholder equity.

6                              **INSIDER SELLING**

7    45.    On or about August 11, 2009, while in possession of the undisclosed

8  material adverse information detailed herein, defendants Manouch Moshayedi and

9  Mark Moshayedi sold 9 million shares of STEC common stock at $31 per share for

10  net proceeds of $267.8 million.

11          **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

12    46.    Plaintiff incorporates ¶¶1-45.

13    47.    Plaintiff brings this action derivatively in the right of STEC and on behalf

14  of STEC to redress injuries suffered, and to be suffered, by STEC as a direct result of

15  the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of

16  corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by

17  the defendants.

18    48.    Plaintiff will adequately and fairly represent the interests of STEC in

19  enforcing and prosecuting its rights.

20    49.    Plaintiff is and was an owner of STEC stock *at all times relevant* to the

21  wrongful course of conduct alleged herein, and remains a shareholder of the

22  Company.

23    50.    As of the date this Complaint was filed, the STEC Board consisted of

24  seven (7) directors: Manouch Moshayedi, Moses, Mark Moshayedi, Witte, Bahri, Ball

25  and Colpitts.

26    51.    Plaintiff has not made a demand on the present Board of STEC to

27  institute this action because such a demand would have been a futile, wasteful and

28  useless act, particularly for the following reasons:

(a)    Any suit by the current directors of STEC to remedy the wrongs complained of herein would expose defendants themselves and their friends and business allies to significant personal liability for their breaches of fiduciary duties and other misconduct. The defendants have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations an/or to sue themselves and/or their fellow directors for the wrongful conduct described herein. Each of the defendants are accused of wrongdoing and recommending, approving and signing the Registration Statement, and thus, face a substantial likelihood of liability, thereby rendering any demand upon them futile.

(b)    Defendants were aware of and participated in and approved of the wrongs alleged herein. Thus, defendants have knowingly chosen not to exercise the fiduciary duties of loyalty and due care owed to the Company, and to protect STEC or to rectify the illegal practices complained of herein. Defendants therefore have approved of and continue to participate in a course of corporate misconduct that includes the following:

(i)    Defendants were involved in approving and/or condoning the illegal conduct and practices described herein. Each defendant had the ability and/or opportunity to prevent these practices. The Board is responsible for overseeing the Company's compliance with legal requirements and, therefore, all directors are liable for not ensuring that the officers and employees of the Company did not expose the Company to unnecessary risk. Because defendants are liable for approving and directing the illegal conduct described herein, demand would be futile.

(ii)    As alleged above, defendant Manouch Moshayedi breached his fiduciary duties of loyalty and good faith by making improper statements regarding STEC's customers, competition, and business prospects. As a result, Manouch Mosshayedi faces a sufficiently substantial likelihood of liability for his breach of fiduciary duty. Accordingly, demand is futile as to defendant Manouch Moshayedi.

(iii)  The principal professional occupation of defendant Manouch Moshayedi is his employment with STEC, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. Specifically, STEC paid defendant Manouch Moshayedi the following compensation:

| Fiscal Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|
| 2008 | $515,000 | $94,632 | $249,947 | $65,651 |

(iv)  Accordingly, defendant Manouch Moshayedi is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to defendant Manouch Moshayedi.

(v)  The principal professional occupation of defendant Mark Moshayedi is his employment with STEC, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. Specifically, STEC paid defendant Mark Moshayedi the following compensation:

| Fiscal Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|
| 2008 | $455,000 | $41,589 | $110,413 | $73,798 |

(vi)  Accordingly, defendant Mark Moshayedi is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to defendant Mark Moshayedi.

(vii)  During the times complained of, defendants Manouch Moshayedi and Mark Moshayedi sold STEC stock under highly suspicious circumstances as alleged above in ¶¶7, 12, 45. In particular, defendants Manouch Moshayedi and Mark Moshayedi sold nine million STEC shares for proceeds of approximately $267 million. Accordingly, these defendants face a substantial

1  likelihood of liability for breach of their fiduciary duty of loyalty. Any demand upon

2  these defendants is futile.

3           (viii)      Defendants Manouch Moshayedi and Mark Moshayedi are

4  brothers and have numerous business relationships with each other. Because of these

5  relationships, defendants Manouch Moshayedi and Mark Moshayedi will not take

6  action against each other as to the claims asserted herein. Accordingly, any demand

7  upon these defendants is futile.

8           (ix)      Defendants Manouch Moshayedi, Mark Moshayedi, Moses,

9  Witte, Bahri, Ball and Colpitts each signed the false and misleading Registration

10  Statement for the August 2009 public offering. By signing the materially false and

11  misleading Registration statement, defendants violated their fiduciary duties of loyalty

12  and candor to shareholders. Defendants' signatures on the false and misleading

13  Registration Statement also violated federal securities laws, *i.e.* the Securities

14  Exchange Act of 1934 and the Securities Act of 1933. Accordingly, these defendants

15  face a substantial likelihood of liability and any demand upon them is excused.

16           (x)      Defendants Witte, Bahri, and Ball serve on the Audit

17  Committee. Members of the Audit Committee, because of their position of control

18  and authority over STEC, were able to, and did, directly and indirectly, control the

19  wrongful acts complained of herein. The members of the Audit Committee failed to

20  ensure that the Company had and maintained adequate internal financial controls and

21  failed to ensure the integrity of the Company's financial statements, including those in

22  the Registration Statement and other financial statements incorporated by reference

23  therein. Because members of the Audit Committee had an affirmative duty to ensure

24  that the Company maintained adequate internal controls over financial reporting and

25  the integrity of the Company's financial statements and failed to do so, members of

26  the Audit Committee breached their fiduciary obligations due the Company.

27  Accordingly, defendants on the Audit Committee could not impartially respond to a

28  demand and it would have been futile.

1          (xi)      Defendants' illegal conduct is not subject to business

2  judgment protection or subject to ratification.

3          (xii)      The wrongful conduct complained of herein by defendants

4  amounted to breaches of their fiduciary duties of good faith, due care and loyalty to

5  STEC and its shareholders.

6          (xiii)      Defendants, and in particular, the members of the Audit

7  Committee, refused to put into place adequate internal controls and adequate means of

8  supervision to stop the wrongful conduct alleged herein despite the fact that the Board

9  knew and/or recklessly ignored such wrongful business practices. These acts, and the

10  acts alleged in this action, demonstrate a pattern of gross misconduct, which conduct

11  is not taken honestly and in good faith.

12          (xiv)      Moreover, despite defendants having knowledge of the

13  claims raised by plaintiff, the current Board has failed and refused to seek to recover

14  for STEC for any of the wrongdoing alleged by plaintiff herein.

15                              **COUNT I**

16          **Against Defendants for Breach of Fiduciary Duty**

17      52.    Plaintiff incorporates ¶¶1-51.

18      53.    Defendants owed and owe STEC fiduciary obligations. By reason of

19  their fiduciary relationships, defendants owed and owe STEC the highest obligation of

20  good faith, fair dealing, loyalty and due care and diligence in the management of the

21  Company.

22      54.    Defendants each violated and breached their fiduciary duties of care,

23  loyalty, reasonable inquiry, oversight, good faith and supervision. They have each

24  also been responsible for the gross and reckless management of STEC and ignored

25  their fiduciary responsibilities by causing the Company to engage in unlawful conduct

26  described herein.

27      55.    Defendants engaged in the above conduct in intentional breach of their

28  fiduciary duties to the Company.

56. Defendants conspired to abuse, and did abuse, their positions of control and oversight at STEC.

57. As a direct and proximate result of defendants' failures to perform their fiduciary obligations, STEC has sustained significant damages. Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company.

<b>COUNT II</b>

<b>Against Defendants for Abuse of Control</b>

58. Plaintiff incorporates ¶¶1-57.

59. Defendants' misconduct alleged herein constitutes a breach of their fiduciary duties because they abused their ability to control and influence STEC, for which they are legally responsible.

60. As a direct and proximate result of defendants' abuse of control, STEC has sustained significant damages.

61. As a result of the misconduct alleged herein, defendants are liable to the Company.

<b>COUNT III</b>

<b>Against Defendants for Gross Mismanagement</b>

62. Plaintiff incorporates ¶¶1-61.

63. By their actions alleged herein, defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of STEC in a manner consistent with the operations of a publicly held corporation.

64. As a direct and proximate result of defendants' gross mismanagement and breaches of duty alleged herein, STEC has sustained significant damages.

65. As a result of the misconduct and breaches of duty alleged herein, defendants are liable to the Company.

- 27 -

## COUNT IV

### Against Defendants for Waste of Corporate Assets

66.    Plaintiff incorporates ¶¶1-65.

67.    As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders and by refusing to conduct proper supervision, defendants have caused STEC to waste valuable corporate assets and incur costs to defend defendants' unlawful actions.

68.    As a result of the waste of corporate assets, defendants are liable to the Company.

## COUNT V

### Against Defendants for Unjust Enrichment

69.    Plaintiff incorporates ¶¶1-68.

70.    By their wrongful acts and omissions, defendants were unjustly enriched at the expense of, and to the detriment of, STEC.

71.    Plaintiff, as a shareholder and representative of STEC, seeks restitution from defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT VI

### Against Defendants Manouch Moshayedi and Mark Moshayedi for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

72.    Plaintiff incorporates ¶¶1-71.

73.    At the time of the stock sales set forth herein, defendants Manouch Moshayedi and Mark Moshayedi (the "Insider Selling Defendants") knew the information described above, and sold STEC common stock on the basis of such information.

74.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a

- 28 -

1  proprietary asset belonging to the Company, which the Insider Selling Defendants
2  used for their own benefit when they sold STEC common stock.

3        75.    At the time of their stock sales, the Insider Selling Defendants knew that
4  the Company's competitive position and prospects were not as represented.  The
5  Insider Selling Defendants' sales of STEC common stock while in possession and
6  control of this material adverse non-public information was a breach of their fiduciary
7  duties of loyalty and good faith.

8        76.    Since the use of the Company's proprietary information for their own
9  gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the
10  Company is entitled to the imposition of a constructive trust on any profits the Insider
11  Selling Defendants obtained thereby.

12  **PRAYER FOR RELIEF**

13  WHEREFORE, plaintiff prays for judgment as follows:

14    A.    Against defendants and in favor of the Company for the amount of
15  damages sustained by the Company as a result of defendants' breaches of fiduciary
16  duties, abuse of control, gross mismanagement, waste of corporate assets, unjust
17  enrichment, aiding and abetting breaches of fiduciary duties, and insider trading;

18    B.    Directing STEC to take all necessary actions to reform and improve its
19  corporate governance and internal procedures to comply with applicable laws and to
20  protect STEC and its shareholders from a repeat of the damaging events described
21  herein;

22    C.    Extraordinary equitable and/or injunctive relief as permitted by law,
23  equity and state statutory provisions sued hereunder, including attaching, impounding
24  and imposing a constructive trust on or otherwise restricting the proceeds of
25  defendants' trading activities or their other assets so as to assure that plaintiff on
26  behalf of STEC has an effective remedy;

27

28

1    D.    Awarding to STEC restitution from defendants, and each of them,

2 including ordering disgorgement of all profits, benefits and other compensation

3 obtained by defendants;

4    E.    Awarding plaintiff the costs and disbursements of the action, including

5 reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

6    F.    Granting such other and further relief as the Court deems just and proper.

7                          **JURY DEMAND**

8    Plaintiff demands a trial by jury.

9 DATED: January 29, 2010                COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
10                                        DARREN J. ROBBINS
                                          TRAVIS E. DOWNS III
11                                        BENNY C. GOODMAN III

12

13                                        _____
                                              BENNY C. GOODMAN III
14
                                          655 West Broadway, Suite 1900
15                                        San Diego, CA  92101-3301
                                          Telephone:  619/231-1058
16                                        619/231-7423 (fax)

17                                        KENDALL LAW GROUP, LLP
                                          JOE KENDALL
18                                        HAMILTON LINDLEY
                                          3232 McKinney Avenue, Suite 700
19                                        Dallas, TX  75204
                                          Telephone:  214/744-3000
20                                        214/744-3015 (fax)

21                                        Attorneys for Plaintiff

22 S:\CptDraft\Derivative\Cpt STEC Derv.doc

23

24

25

26

27

28

- 30 -

**VERIFICATION**

1

2    I, Marlyn J. Spear _____, say:

3    I am the plaintiff in the above-entitled action. I have read the foregoing

4    complaint and know the contents thereof and I certify that the same is true of my own

5    knowledge, except as to those matters which are therein stated upon my information

6    or belief, and as to those matters I believe it to be true.

7    I declare under penalty of perjury under the laws of the United States of

8    America that the foregoing is true and correct.

9    Executed this 25 day of 01 , 2010 at New, Wisconsin .

10

11                          BUILDING TRADES UNITED

12                          PENSION TRUST FUND

13

14                          _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

478394_2

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BUILDING TRADES UNITED PENSION TRUST
FUND, Derivatively on Behalf of STEC, INC.

PLAINTIFF(S)

v.

MANOUCH MOSHAYEDI, MARK MOSHAYEDI,
(See Attachment A)

DEFENDANT(S).

CASE NUMBER

**CV10-00667 SJO(ANX)**

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, _Benny C. Goodman III_____, whose address is
_Coughlin Stoia, et al., 655 West Broadway, Suite 1900, San Diego, CA 92101_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

JAN 2 9 2010

Dated: _____

Clerk, U.S. District Court

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                             SUMMONS

ATTACHMENT A

RAYMOND D. COOK, RAJAT BAHRI, F. MICHAEL BALL, CHRISTOPHER W. COLPITTS, MATTHEW L. WITTE and DAN MOSES,

Defendants,

– and –

STEC, INC., a California corporation,

Nominal Defendant.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## CV10- 667 SJO (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
BUILDING TRADES UNITED PENSION TRUST FUND, Derivatively on
Behalf of STEC, INC.

**DEFENDANTS**
MANOUCH MOSHAYEDI, MARK MOSHAYEDI.
(See Attachment A)

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)
Benny C. Goodman III, Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900, San Diego, CA  92101  619/231-1058

Attorneys (If Known)

**CV10-00667 SJO(ANX)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No          ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §1332(a)(2)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:   Case Number:** _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                      ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                      ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                      ☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Wisconsin |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date January 29, 2010

    **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

ATTACHMENT A

RAYMOND D. COOK, RAJAT BAHRI, F. MICHAEL BALL, CHRISTOPHER W. COLPITTS, MATTHEW L. WITTE and DAN MOSES,

    Defendants,

    – and –

STEC, INC., a California corporation,

    Nominal Defendant.