# EXHIBIT A

1  LIONEL Z. GLANCY (#134180)
2  MICHAEL GOLDBERG (#188669)
3  GLANCY BINKOW & GOLDBERG LLP
   1801 Avenue of the Stars, Suite 311
4  Los Angeles, California 90067
5  Telephone:  (310) 201-9150
   Facsimile:  (310) 201-9160
6  E-mail:    info@glancylaw.com

7  *[Additional Counsel on Signature Page]*

8
9  Attorneys for Plaintiff Fred Jean

10      UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA

12
13          SOUTHERN DIVISION

14

15                                          ) No.  SACV09-01304 JVS (MLGx)
16  FRED JEAN, Individually and on Behalf of )
    All Others Similarly Situated,          ) CLASS ACTION
17                                          )
18                          Plaintiff,      ) COMPLAINT FOR
                                            ) VIOLATIONS OF THE
19              v.                          ) FEDERAL SECURITIES
                                            ) LAWS
20  STEC, INC., MANOUCH MOSHAYEDI,          )
21  and MARK MOSHAYEDI,                     )
22                                          )
                            Defendants.     ) DEMAND FOR JURY TRIAL
23                                          )
24
25
26
27
28
     _____
     CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
                                                                    1

Plaintiff Fred Jean, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by STEC, Inc. ("STEC" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by STEC; and (c) review of other publicly available information concerning STEC.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of purchasers of STEC's securities between August 3, 2009 and November 3, 2009, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. STEC designs, manufactures and markets enterprise-class solid state drives ("SSDs"), for use in high performance storage and server systems, and high density dynamic random access memory ("DRAM"), modules for networking, communications and industrial applications. STEC's ZeusIOPS SSD product family offers an array of options for enterprise system architects. ZeusIOPS SSD provides interface options, spanning Fibre Channel to SAS to SATA, as well as a range of

capacity options, spanning 73GB to 1TB.

3. On November 3, 2009, STEC shocked investors when it announced that one of its largest customers, which accounts for 90 percent of STEC's ZeusIOPS SSD business and which had placed a $120 million order for the second half of 2009, would carry 2009 inventory into 2010, placing STEC's 2010 first quarter results at risk.

4. On this news, shares of STEC declined $9.01 per share, more than 38%, to close on November 4, 2009, at $14.14 per share, on unusually heavy volume.

5. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company over sold its largest customer more inventory than it required; (2) that, as such, the Company overstated the demand for its ZeusIOPS SSD products; (3) that the Company's subsequent revenue and financial results for the following year would be negatively impacted; and (4) that, as a result of the above, Defendants' statements during the Class Period lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and

other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.     Venue is proper in this Judicial District pursuant to §28 U.S.C. §1391(b), §27 of the Exchange Act (15 U.S.C. §78aa(c)).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this District. Additionally, STEC is a California corporation and maintains its principal executive offices within this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications,

and the facilities of a national securities exchange.

## **PARTIES**

12.     Plaintiff Fred Jean, as set forth in the accompanying certification, incorporated by reference herein, purchased STEC common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant STEC is a California corporation with its principal executive offices located at 3001 Daimler Street, Santa Ana, California, 92705.

14.     Defendant Manouch Moshayedi was, at all relevant times, Chief Executive Officer ("CEO") and Chairman of the Board of Directors of STEC.

15.     Defendant Mark Moshayedi was, at all relevant times, President, Chief Operating Officer, Chief Techincal Officer, Secretary, and a Director, of STEC.

16.     Defendants Manouch Moshayedi and Mark Moshayedi are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of STEC's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance

and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     STEC designs, manufactures and markets enterprise-class SSDs, for use in high performance storage and server systems, and high density DRAM, modules for networking, communications and industrial applications. STEC's ZeusIOPS SSD product family offers an array of options for enterprise system architects. ZeusIOPS SSD provides interface options, spanning Fibre Channel to SAS to SATA, as well as a range of capacity options, spanning 73GB to 1TB.

18.     On July 16, 2009, STEC issued a press release entitled, "STEC Signs a $120 Million Supply Agreement for ZeusIOPS SSDs for 2H 2009 and Now Forecasts Sales of ZeusIOPS SSDs to Exceed $220 Million in 2009." Therein, the Company,

in relevant part, stated:

**STEC and Its Major Enterprise Storage Customers Continue
Collaboration to Drive Adoption of SSD Technology
Into High-Performance Enterprise Storage Systems**

SANTA ANA, Calif., July 16, 2009 (GLOBE NEWSWIRE) -- STEC, Inc. (Nasdaq:STEC), announced today that it has signed an agreement with one of its largest enterprise storage customers for sales of $120 million of ZeusIOPS SSDs in the second half of 2009. STEC believes that this agreement reflects the enterprise storage manufacturer's continued commitment to integrate STEC's SSD technology into the manufacturer's systems and validates significant storage system performance improvements enabled by STEC's ZeusIOPS SSDs in these enterprise systems. With this agreement signed, STEC now forecasts revenue from the sale of its ZeusIOPS drives will exceed $220 million in 2009.

"We are pleased to see that sales of our customer's enterprise storage systems utilizing our ZeusIOPS drives have grown significantly over the past few years," said Manouch Moshayedi, Chairman and Chief Executive Officer of STEC. "Our customers have helped evangelize this technology and we are glad to be partnered with them as we expect that they will help drive further innovation in SSD usage in the highest-end of the enterprise storage markets."

The STEC ZeusIOPS SSD product family offers a comprehensive array of options for enterprise system architects. ZeusIOPS SSD provides a wide range of interface options, spanning Fibre Channel to SAS to SATA, as well as the widest range of capacity options, spanning 73GB to 1TB. Fundamental to the ZeusIOPS product family is the proprietary SSD architecture which renders an enterprise-optimized storage device with an unprecedented combination of performance and energy efficiency.

(Emphasis in original).

---

**Materially False and Misleading
Statements Issued During the Class Period**

19.     The Class Period begins on August 3, 2009.  On this day, STEC issued

a press release entitled, "STEC Announces Second Quarter 2009 Results."  Therein,

the Company, in relevant part, stated:

**Revenue, Gross Profit Margin and EPS Higher On
Faster-Than-Expected Adoption of Its
Enterprise Class Solid State Drives**

SANTA ANA, Calif., Aug 3, 2009 (GlobeNewswire via COMTEX) --
STEC, Inc. (Nasdaq:STEC) announced today its financial results for the
second quarter ended June 30, 2009. Revenue for the second quarter of
2009 was $86.4 million, an increase of 53.7% from $56.2 million for the
second quarter of 2008, and an increase of 35.9% from $63.5 million for
the first quarter of 2009. Shipments of our ZeusIOPS Solid-State drives
("SSD") into the Enterprise-Storage market grew to $57.7 million for the
second quarter of 2009, an increase of approximately 375% from $12.1
million for the second quarter of 2008, and an increase of approximately
125% from $25.7 million for the first quarter of 2009.

GAAP gross profit margin was 50.0% for the second quarter of 2009,
compared to 32.3% for the second quarter of 2008 and 36.3% for the
first quarter of 2009. GAAP diluted earnings per share from continuing
operations was $0.38 for the second quarter of 2009, compared to $0.03
for the second quarter of 2008, and $0.07 for the first quarter of 2009.

Non-GAAP gross profit margin increased to 50.1% for the second
quarter of 2009, compared to 35.3% for the second quarter of 2008 and
39.8% for first quarter of 2009. Non-GAAP diluted earnings per share
from continuing operations was $0.42 for the second quarter of 2009,
compared to $0.09 for the second quarter of 2008, and $0.17 for the first
quarter of 2009. GAAP results for the second quarter of 2009 included
employee stock compensation, special charges related to the

implementation of our restructuring plan and grant incentive income received from the Malaysian government. Non-GAAP results are explained and reconciled to GAAP results in tables included in this release.

Additional highlights for the second quarter of 2009 include:

* signed a recently-announced $120 million contract to supply ZeusIOPS SSDs to a major Enterprise-Storage customer for the second half of 2009;
* signed a $28 million, 12-month contract to supply the ruggedized MACH8 SSD to a leading defense systems contractor, extending reach of one our key product lines beyond the traditional storage market;
* accelerated adoption of the ZeusIOPS SSDs into major Enterprise-Storage and Enterprise-Server OEM customers, including IBM, Fujitsu, Compellent and HP;
* increased cash and cash equivalents, and short-term investments at the end of the second quarter of 2009 to approximately $94 million, a 49% increase from the end of the prior quarter;
* decreased inventory to approximately $38 million at the end of the second quarter of 2009, a 16% decrease from the end of the prior quarter; and
* successfully transitioned 100% of the Company's manufacturing from California to Malaysia.

Business Outlook

"It is exciting to share such outstanding results today and to deliver significant revenue, gross profit margin and EPS growth for the second quarter of 2009," said Manouch Moshayedi, STEC's Chairman and Chief Executive Officer. "We have shown a significant improvement in our already strong balance sheet -- particularly in the generation of cash and effective management of inventory - added four more major Enterprise-Storage OEMs to our blue chip customer list, and surpassed our stated year-end 2009 non-GAAP gross profit margin goal of 40%, expanding it to 50% in the second quarter of 2009.

"In our prior quarter's earnings announcement we had estimated that ZeusIOPS revenue for the first half of 2009 would surpass $53 million. I am pleased to report that we have actually achieved $83 million in ZeusIOPS revenue for this period. Although we are still early in the process of the adoption of SSDs into the Enterprise-Storage market, I believe that the $120 million supply agreement that we signed for the second half of 2009 is a further indication of future SSD growth and customers' acceptance of SSDs into this growing market. I am very excited about our product road map -- specific to the Enterprise-Storage, Enterprise-Server and related markets."

Guidance

"We currently expect third quarter of 2009 revenue to range from $95 million to $97 million with diluted non-GAAP earnings per share to range from $0.45 to $0.47."

(Emphasis in original).

20.     On August 3, 2009, STEC filed its Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal second quarter. The Company's Form 10-Q reaffirmed the Company's financial results previously announced on August 3, 2009. Therein, the Company, in relevant part, stated:

We expect continued growth in the sales of our Flash-based SSD ZeusIOPS products through 2009 based on the accelerated adoption of our ZeusIOPS SSDs by most of our major enterprise-storage and enterprise-server OEM customers into their systems. As part of this expected growth, on July 16, 2009 we announced an agreement with one of our largest enterprise storage customers for sales of $120 million of ZeusIOPS SSDs in the second half of 2009.

21.     The statements contained in ¶¶19-20 were materially false and/or

misleading when made because defendants failed to disclose or indicate the following: (1) that the Company over sold its largest customer more inventory than it required; (2) that, as such, the Company overstated the demand for its ZeusIOPS SSD products; (3) that the Company's subsequent revenue and financial results for the following year would be negatively impacted; and (4) that, as a result of the above, Defendants' statements during the Class Period lacked a reasonable basis.

## Disclosures At The End Of The Class Period

22. On November 3, 2009, STEC issued a press release entitled, "STEC Announces Third Quarter 2009 Results." Therein, the Company, in relevant part, stated:

> "One of our customers entered into a $120 million supply agreement with us for shipments covering the second half of 2009. We recently received preliminary indications that our customer might carry inventory of our ZeusIOPS at the end of 2009 which they will use in 2010. In light of this development, we have jointly initiated a strategic sales and marketing incentive program designed to promote the integration of STEC's SSDs into their systems. As of September 30, 2009, we have accrued $1.5 million of estimated costs for this marketing incentive program. Both companies believe that we will be successful in increasing the pace of the replacement of HDDs with SSDs. If our marketing program is not successful in increasing the demand flow of SSDs, our first quarter of 2010 orders from this customer will be negatively affected; however, the actual impact cannot be quantified at this time.

> "We are also working on implementing sales and marketing incentive programs at our other major customers to further proliferate the use of our SSDs in their systems. We believe that it is just a matter of time

---

before these customers become more significant to our overall sales of SSDs. In addition, we continue to qualify our ZeusIOPS into new platforms at our customers and are working closely with them to promote integration of SSDs into their systems by participating in sales conferences and end-user training programs both in the U.S. and in Europe. We believe these activities will help accelerate the adoption of our SSDs over the course of 2010.

"Longer-term, we believe that SSDs in the Enterprise market are here to stay and will grow to become a very significant market within the next five years. Further, we believe that as this market grows, there will be room for a few additional players and that STEC will remain the dominant player in Enterprise-class SSDs."

23.     On this news, shares of STEC declined $9.01 per share, or 38.92%, to close on November 4, 2009, at $14.14 per share, on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased STEC's securities between August 3, 2009 and November 3, 2009, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, STEC's securities were actively

traded on National Association of Securities Dealers Automated Quotations Market ("NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of STEC shares were traded publicly during the Class Period on the NASDAQ and as of October 16, 2009, STEC had 50,264,383 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by STEC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of STEC; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30.     The market for STEC's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, STEC's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired STEC's securities relying upon the integrity of the market price

of the Company's securities and market information relating to STEC, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of STEC's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about STEC's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about STEC's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class

1    Period resulted in Plaintiff and other members of the Class purchasing the Company's

2

3    securities at artificially inflated prices, thus causing the damages complained of

4    herein.

5                          **LOSS CAUSATION**

6

7         33.    Defendants' wrongful conduct, as alleged herein, directly and

8    proximately caused the economic loss suffered by Plaintiff and the Class.

9         34.    During the Class Period, Plaintiff and the Class purchased STEC's

10

11   securities at artificially inflated prices and were damaged thereby.  The price of the

12   Company's securities significantly declined when the misrepresentations made to the

13

14   market, and/or the information alleged herein to have been concealed from the

15   market, and/or the effects thereof, were revealed, causing investors's losses.

16                      **SCIENTER ALLEGATIONS**

17

18        35.    As alleged herein, Defendants acted with scienter in that Defendants

19   knew that the public documents and statements issued or disseminated in the name

20

21   of the Company were materially false and/or misleading; knew that such statements

22   or documents would be issued or disseminated to the investing public; and knowingly

23   and substantially participated or acquiesced in the issuance or dissemination of such

24

25   statements or documents as primary violations of the federal securities laws.  As set

26   forth elsewhere herein in detail, Defendants, by virtue of their receipt of information

27

28

reflecting the true facts regarding STEC, his/her control over, and/or receipt and/or modification of STEC's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning STEC, participated in the fraudulent scheme alleged herein.

36. Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, on or around August 11, 2009, the Company conducted a secondary public offering in which the Individual Defendants sold approximately 9,000,000 shares of STEC's common stock at a price of $31.00 per share, for gross proceeds to the Individual Defendants of approximately $279 million.

37. Given the timing, magnitude, and deviation from their prior trading history, the Individual Defendants' transactions were highly unusual and suspicious. Defendant Manouch Moshayedi sold 4,112,618 shares of his 7,321,889 beneficially owned shares of the Company's stock, or approximately 56.17%, and Defendant Mark Moshayedi sold 4,887,382 of his 10,331,778 beneficially owned shares of the Company's common stock, or approximately 47.3%.

38. Moreover, the Individual Defendants' transactions were highly unusual and suspicious in that the Individual Defendants abandoned their recently adopted 10b5-1 trading plans. Despite STEC announcing on May 29, 2009, that the Individual Defendants had adopted pre-arranged 10b5-1 trading plans "provid[ing]

for potential sales of common stock over a period of 18 months, if pre-determined price thresholds and other conditions set forth in the plans are met" and stating that "[s]ales under stock trading plans have the effect of spreading stock trades over an extended period of time and are thereby intended to reduce market impact," the Individual Defendants inexplicably decided approximately two months later to terminate their 10b5-1 trading plans and unload all at once 9,000,000 shares of the Company's common stock.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

39.     The market for STEC's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, STEC's securities traded at artificially inflated prices during the Class Period.  On September 10, 2009, the price of the Company's common stock closed at a Class Period high of $41.84 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of STEC's securities and market information relating to STEC, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of STEC's stock was caused by the material misrepresentations and/or omissions particularized in this

Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about STEC's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of STEC and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41. At all relevant times, the market for STEC's securities was an efficient market for the following reasons, among others:

(a) STEC stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, STEC filed periodic public reports with the SEC and the NASDAQ;

(c) STEC regularly communicated with public investors *via* established market communication mechanisms, including through regular

dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     STEC was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for STEC's securities promptly digested current information regarding STEC from all publicly available sources and reflected such information in STEC's stock price. Under these circumstances, all purchasers of STEC's securities during the Class Period suffered similar injury through their purchase of STEC's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the

statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of STEC who knew that the statement was false when made.

### FIRST CLAIM
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged

---

herein; and (ii) cause Plaintiff and other members of the Class to purchase STEC's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for STEC's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about STEC's financial well-being and prospects, as specified herein.

48. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of STEC's value and performance and continued substantial growth, which included the

making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about STEC and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of

information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing STEC's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of STEC's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially

inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired STEC's securities during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that STEC was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their STEC securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

55.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.   The Individual Defendants acted as controlling persons of STEC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.     As set forth above, STEC and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: November 6, 2009          **GLANCY BINKOW & GOLDBERG LLP**

By: _____
       Lionel Z. Glancy
       Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**SAXENA WHITE P.A.**
Maya S. Saxena
Joseph E. White III
2424 N. Federal Highway
Suite 257
Boca Raton, Florida 33431
Telephone:  (561) 394-3399
Facsimile:   (561) 394-3382

***Attorneys for Plaintiff Fred Jean***

**GLANCY BINKOW & GOLDBERG LLP**
**SWORN CERTIFICATION OF PLAINTIFF**

I, Fred Jean, ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.    Plaintiff has reviewed the complaint and authorizes its filing.

2.    Plaintiff did not purchase the securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.    Plaintiff's transaction(s) in the STEC, Inc. (NASDAQ: STEC) securities that are the subject of this action is/are as follows:

| Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|
| 250 | B | | 8/3/09 | $35.00 |
| 250 | B | | 8/7/09 | $30.228 |
| 250 | | S | 8/31/09 | $39.00 |
| 250 | B | | 9/17/09 | $35.50 |
| 500 | | S | 10/27/09 | $22.00 |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.    Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below

_____

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of November, 2009.

_____
Fred Jean

LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| FRED JEAN, Individually and on Behalf of All Others Similarly Situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | **SACV09-01304 JVS (MLGx)** |
| STEC, INC., MANOUCH MOSHAYEDI, and MARK MOSHAYEDI, | |
| DEFENDANT(S). | **SUMMONS** |

TO:     DEFENDANT(S): ____  _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Lionel Z. Glancy_____, whose address is _Glancy Binkow & Goldberg LLP, 1801 Ave of the Stars, #311, Los Angeles, CA 90067_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____NOV - 6 2009_____

By: _ROLLS ROYCE PASCHAL_____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) FRED JEAN, Individually and on Behalf of All Others Similarly Situated, | DEFENDANTS STEC, INC., MANOUCH MOSHAYEDI, and MARK MOSHAYEDI, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Lionel Z. Glancy (#134180) Michael Goldberg (#188669) Glancy Binkow & Goldberg LLP 1801 Ave of the Stars, Ste. 311, Los Angeles, CA Tel: 310/201.9150 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

| | |
|---|---|
| □ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) |
| □ 2 U.S. Government Defendant | □ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No     ☐ MONEY DEMANDED IN COMPLAINT: $ 0

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
10(b) & 20(a) of the Securities Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] & Private Securities Litigation Reform Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | □ 530 General | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 535 Death Penalty | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | BANKRUPTCY | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 470 Racketeer Influenced and Corrupt Organizations | □ 151 Medicare Act | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 480 Consumer Credit | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| □ 490 Cable/Sat TV | | □ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | □ 610 Agriculture | □ 820 Copyrights |
| □ 810 Selective Service | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 360 Other Personal Injury | □ 441 Voting | □ 620 Other Food & Drug | □ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | □ 160 Stockholders' Suits | □ 362 Personal Injury-Med Malpractice | □ 442 Employment | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 875 Customer Challenge 12 USC 3410 | □ 190 Other Contract | □ 365 Personal Injury-Product Liability | □ 443 Housing/Acco-mmodations | □ 630 Liquor Laws | SOCIAL SECURITY |
| □ 890 Other Statutory Actions | □ 195 Contract Product Liability | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | □ 640 R.R. & Truck | □ 861 HIA (1395ff) |
| □ 891 Agricultural Act | □ 196 Franchise | | □ 445 American with Disabilities - Employment | □ 650 Airline Regs | □ 862 Black Lung (923) |
| □ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | □ 446 American with Disabilities - Other | □ 660 Occupational Safety /Health | □ 863 DIWC/DIWW (405(g)) |
| □ 893 Environmental Matters | □ 210 Land Condemnation | □ 462 Naturalization Application | □ 440 Other Civil Rights | □ 690 Other | □ 864 SSID Title XVI |
| □ 894 Energy Allocation Act | □ 220 Foreclosure | □ 463 Habeas Corpus-Alien Detainee | | | □ 865 RSI (405(g)) |
| □ 895 Freedom of Info. Act | □ 230 Rent Lease & Ejectment | □ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

## SACV09-01304 JVS (MLGx)

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)     **CIVIL COVER SHEET**     Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
         ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
         ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
         ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Georgia |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date November 6, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |